Heath vs. Heath.

## HEATH VS. HEATH.

*Jurisdiction of J. P.— How bar of statute of limitations waived.— Statute of frauds ; contract not to be performed within one year.*

1. On appeal from a justice's court, where the cause is triable *de novo* at the circuit, either party may be allowed to enlarge his demand of damages beyond the amount of which a justice has jurisdiction.

2. On appeal to this court from the judgment of the circuit court in such a cause, the fact that plaintiff's defense or counterclaim, as pleaded or sought to be established in *both the lower courts*, involved the investigation of accounts to an amount exceeding the jurisdiction of the justice, does not raise any jurisdictional question here; but the cause stands as though defendant had been permitted to file such an swer in the circuit court, after appeal taken thereto.

3. In justice's court, evidence offered by defendant to establish a claim barred by the statute of limitations, must be objected to specifically on that ground, or the bar of the statute is waived.

4. An oral contract between A and B to support C for the remainder of her natural life, is not void by the statute of frauds, since it *may* be fully performed within a year from its date.

5. Where, several years after the making of such oral contract, A and B, for a further consideration, entered into a written contract with C to

support her in a certain manner for the remainder of her life, and A afterwards brought suit against B to recover one-half of the amount expended by A in excess of that expended by B in the support of C under said written contract: *Held*, that B might counterclaim for one-half the amount previously expended by him in excess of that expended by A under the former oral contract.

APPEAL from the Circuit Court for *Iowa* County.

This action was commenced before a justice of the peace in January, 1871. The complaint alleged that plaintiff and defendant, on the 9th of April, 1867, entered into a written contract with their mother, Lydia C. Heath, whereby they mutually covenanted to provide for, keep and maintain said Lydia C. Heath, in their family circle, and to furnish her with all the necessaries of life, etc., and that in pursuance of said contract, plaintiff did, from said 9th of April, 1867, until the 9th of April, 1870, maintain and provide for said Lydia C. Heath, in his own family. The complaint then, after stating the particulars of plaintiff's account, alleges that during the time mentioned, plaintiff had expended in the maintenance of said Lydia C. Heath, $377.35, one-half of which sum·defendant, by said contract, had agreed to pay; and that defendant was indebted to plaintiff, by virtue of said contract, in the sum of $188.67, which he refused to pay; and judgment for that sum is demanded.

The answer (which was in writing) denied every allegation of the complaint not afterwards admitted; and it then alleged that on the 12th of September, 1861, the parties to this action entered into a contract with their mother that they would do for her everything that the complaint alleges they agreed to do in the alleged contract of April 9, 1867; that in pursuance of said first-mentioned contract, defendant took his said mother into his family, maintained and provided for her at his own expense for five years, and that such maintenance was worth $520; that the consideration of said contract was the deeding of cert in lands to the parties to this action as tenants in com-

mon, and the delivery of possession thereof to said parties; that said parties were then living together, and went into possession of the land, and commenced providing for their mother pursuant to said contract, but subsequently the plaintiff was absent from the state for four or five years, and during that time defendant had possession of said land, paid $100 taxes, and provided for the entire support of their said mother; that subsequently the parties became owners of the land in severalty; and that from the date of the first contract to the present time defendant had expended more time and money than the plaintiff in the support and maintenance of their mother. Prayer, for an accounting between the parties "upon any and all contracts they had entered into," and for judgment in defendant's favor for any sum that might be found due him upon such accounting.

Upon a trial before the justice, judgment was rendered in plaintiff's favor for $113.02, damages, and for costs. The defendant appealed to the circuit court. Upon the trial in that court, the plaintiff put in evidence the bond or contract of April 9, 1867, mentioned in the complaint. The consideration therefor recited, in the contract itself, is the execution on that day of a quitclaim deed of certain land from said Lydia C. Heath to plaintiff and defendant. As a witness in his own behalf, plaintiff gave testimony tending to support his demand. He also put in evidence a warranty deed of the same land, executed by Lydia C. Heath to himself and defendant, in March, 1861, but containing the following reservation: "The said party of the first part hereby reserving to herself the right to the possession of said premises during her natural life." He also introduced the quitclaim deed of April 9, 1867, mentioned in the contract of that date.

The defendant, against plaintiff's objection, which was general in form, introduced testimony tending to show the oral contract entered into in 1861, as set up in the answer. He also introduced other evidence in support of his counterclaim for

expenditures in support of the mother for five years from September, 1861. There was some evidence introduced by each party as to the value of the use of the land (which was a farm) during the five years that plaintiff was absent from the state, and defendant in possession of said land.

The court, *inter alia*, instructed the jury, in substance, that defendant was liable for one-half of the reasonable expenditures of the plaintiff for the support of the mother pursuant to the written contract of 1867; that if the verbal contract for her support was made in 1861, as testified by the defendant, and if defendant had supported the mother during plaintiff's absence from the state, and there had been no settlement for that, then defendant should be allowed one-half of a reasonable sum for her maintenance during that time; and that he should be credited for one-half the taxes he had paid, and permanent improvements, if any, and charged with one-half of the reasonable value of the use of the farm. The plaintiff excepted to the whole charge.

Verdict for the defendant, assessing his damages at $37.50; new trial denied; and plaintiff appealed from a judgment on the verdict.

*Henry & Smith* and *Cothren & Lanyon*, for appellant:

1. The court instructed the jury to inquire into the whole of defendant's demand (amounting to $620), treating it as a counterclaim. This was error. (1) The demand was not interposed as a counterclaim. If it had been, it would have been demurrable. The justice had jurisdiction of an account for $250, if reduced by credits to $100. R. S., ch. 120, sec. 9; Laws of 1870, ch. 30. The plaintiff's claim is not disputed at $188.68. The jury awarded defendant $37.50 damages. To arrive at this result they must have found that defendant's claim amounted to $226.17, a sum which exceeded the jurisdiction of the justice. (2) The claim of defendant for the first four years was barred by the statute of limitations. *Kimball v. Brown*, 7 Wend., 322; *Edmunston v. Thompson*, 15 id., 554;

*Gold v. Whitcomb,* 4 Pick., 188; Chitty on Con., 808; Angell on Lim., 133, 135. 2. The evidence did not show any agreement by plaintiff to support the mother, prior to the written contract of 1867. And if there was any such agreement, it was void, not having been reduced to writing. R. S., ch. 107, sec. 2. Conceding that as between the mother and these parties it might be good, being for the support of a parent, yet, as between these parties, it cannot be enforced for contribution.

*Alex. Wilson,* for respondent:

1. The general exception to the whole charge is of no avail, unless the whole was erroneous. *Strohn v. R. R. Co.,* 23 Wis., 129; *Wood v. Aldrich,* 25 id., 695. 2. The answer set up a valid counterclaim. R. S., chap. 125, sec. 11. The making of the written agreement in 1867 was not conclusive evidence that all former claims between the parties were settled. 3 E. D. Smith, 531; 12 Wis., 257; 1 Pick., 332. 3. There was sufficient evidence to support the verdict; and this court will not interfere with the decision of the circuit court refusing a new trial. *Eaton v. Joint School Dist.,* 23 Wis., 374; 18 id., 594; 12 id., 628; 5 id., 107.

COLE, J. In this case the plaintiff insists that the matters set up in the answer as a defense or counterclaim were obnoxious to two objections: *first,* that an investigation of them exceeded the amount over which the justice had jurisdiction; and *second,* that the statute of limitations had run against those claims.

We cannot see that any question of jurisdiction arises upon this record. It is true, an investigation of all the accounts and demands set up in the answer would exceed the jurisdiction of the justice. But what is there to show that the justice attempted to investigate them? It seems there was a judgment for the plaintiff in the justice's court for $113.02, which would necessarily involve the examination of claims amounting to $226, or thereabouts. When the cause was removed to

the circuit court, the parties might increase the *ad damnum* claimed. This is frequently done for the purpose of extending the scope of the judicial inquiry. And this case stands here in precisely the same position it would had the defendant obtained leave of the circuit court to file an answer containing the matters set up in the one before us. It seems to us that this is all that need be said upon that point.

Then, as to the defense of the statute of limitations. The plaintiff might doubtless have taken advantage of the statute upon the trial, by objecting to the introduction of evidence to prove a demand upon which it had run. But the record fails to show that this was done. True, the plaintiff objected to the evidence offered to prove the parol contract alleged to have been made in 1861, for the support of Mrs. Heath, but not on the ground that the statute of limitations had run against claims growing out of it. The objection is a general one, without any reference whatever to the statute of limitations. We do not suppose, therefore, that there is any question arising under the statute of limitations before us. For certainly the plaintiff was bound to object in this case, which arose in a justice's court, to the introduction of evidence on the part of the defendant to prove a claim against which the statute had run, and place his objection upon that distinct ground, in order to have the benefit of that defense. And this he did not do.

The objection taken, however, was sufficient to raise the question of the competency of that evidence. And upon that point it seems to us perfectly clear, that, if a verbal agreement of the kind was made, it might be proven by any one who had knowledge of it, and could testify as to the terms and conditions of the contract. These parties are brothers, and the defendant offered evidence tending to prove that a verbal contract was entered into between them in 1861, by which they agreed to support their mother during her natural life — each one contributing equally thereto — in consideration of the homestead, which she had conveyed to them. It is suggested

that such a contract would be void, because, by its terms, it was not to be performed within a year from the making thereof. But this a mistake. It is apparent that this contract might have been entirely performed within a year consistently with the understanding of the parties, because Mrs. Heath might have died within that time. "When the promise is to continue to do something until the contingency occur, as for instance to pay during the promissee's life; to pay during the life of another; to board the promissee during his life; to pay the expenses of a child so long as it should be chargeable to the town; to educate a child; to support a child, who is eleven years old, till she is eighteen; to pay during coverture; in all these cases the promise is not affected by the statute, because the party whose life is involved may die within the year." Browne on Frauds, (2d ed.), chap. 13, § 276. Of course all the evidence relating to this alleged verbal contract made in 1861, tended to prove an agreement antecedent to and independent of the written contract upon which the plaintiff sued. It referred to entirely different transactions. There was no legal objection, therefore, that we can see, to proving this parol contract by any competent testimony. And this disposes of the objection taken to the admission of this evidence.

The circuit court seems to have submitted the case very fairly to the jury in its charge. The jury has passed upon the evidence, and there is no ground for saying that the verdict is unsupported by the testimony given on the trial. The plaintiff asked no instructions, but did take a general exception to the charge given. But this exception raises no question of law upon the charge, as has frequently been decided by this court. 11 Wis., 168; 15 id., 257; 16 id., 225; 17 id., 665; 21 id., 427; 23 id., 126; 24 id., 139.

It follows from these views that the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.